McIlvaine, J.
The defendant in error contracted with the Dayton, Xenia & Belpre Eailroad Company, plaintiff in error, in writing as follows:
“ This memorandum witnesseth that Henry Lewton, of Montgomery county, Ohio, agrees to release to the Dayton, Xenia & Belpre Eailroad Company the right of way and the right to enter upon and construct their road through the following lands owned by the said Lewton and occupied by him as a home farm. Said lands being situate in sec. 21, town 2, range 7 Mad Eiver township, Montgomery county, Ohio. Said road to be made on the west line by Mr. Pomeroy previous to this date; said right of way on an average of fifty feet in width through said farm. The said Henry Lewton agrees to make and keep up good and lawful fences on each side of said roadway : said fences to be made as soon as possible after the completion of said road.
“ For and in consideration of the right of way, and the right to enter upon and construct said Dayton, Xenia & Belpre Eailroad, the said Dayton, Xenia and Belpre Eailroad Company agree to pay the said Henry Lewton the sum of fifteen hundred dollars, as follows, viz.: one-third, five hundred dollars ($500), on or before commencing work on said lands; one-third, five hundred dollars ($500), in one year; and one-third, five hundred dollars ($500), in two years after the payment of the first payment with interest; and also to make a road crossing and two cattle guards at or near station 600, and one cattle guard at the west end of said farm, and also to make a culvert or bridge crossing at a branch at station 615 large enough for a wagon track. It is understood that Mr. Lewton’s grain fields are not to be disturbed until after harvest.
“ Henry Lewton.”
“May 2, 1853.
On the 11th of June, 1853, said Dayton, Xenia & Belpra *409 .Railroad Company paid $500, took possession of the right of way, and constructed its road from Dayton to Xenia, partly over said lands, and the same has been used as a public highway, or railroad, ever since.
In November, 1857, the defendant in error recovered a judgment against said railroad company for a balance of the purchase-money. And in March, 1858, in the same action, a further judgment for $500, as damages for the failure of said company to construct its road in the manner provided in the contract.
These judgments have never been paid. And said right of way has not been conveyed, otherwise than by said instrument.
In January, 1855, said railroad company executed a mortgage on said railroad to plaintiff in error Charles W. Rockwell, trustee, to secure the payment of five hundred bonds for $1,000 each. Rockwell at the time had no actual notice that plaintiff’s claim had not been paid.
In October, 1865, Rockwell obtained a decree upon said mortgage for the sale of the railroad ; and in January, 1866, the same was sold on said decree to The Little Miami and Columbus and Xenia Railroad Companies (also plaintiffs in error) for a sum of money insufficient to discharge the mortgage lien. This sale was confirmed and the purchasers put in possession.
The defendant in error was not a party to said action to foreclose, nor had he any actual knowledge of the pendency of the action.
In April, 1868, the defendant in error obtained a decree in the superior court of Montgomery county, for the payment .of the amount due him on said judgment, and, in default of such payment, for the Bale of said railroad, with its rights, privileges, and franchises, for the purpose of satisfying said judgments. In this decree, or prior thereto, the court did not find the amount due on said mortgage, nor settle any questions of priority, etc.
This is the judgment or decree sought to be reversed is this proceeding.
*410 The several errors assigned by plaintiffs in error may be embraced in this general question — Did the court below erx in rendering said decree upon the foregoing state of facts %
Several propositions, however, are embraced and must be answered sepai’ately.
1. Was the defendant in error entitled to the relief decreed to him ?
What is the natui-e of the case made by him ? The pi’operty ordered to be sold includes an easement of the right of way of the Dayton, Xenia & Belpre Railroad, over the lands of the defendant in error; and his claim, in part at least, was for unpaid purchase-money for that easement. A purchaser of realty ought not to enjoy the estate purchased without paying for it; thei-efore, in equity, the vendor has a lien upon the propei’ty sold, for the payment of the purchase-money. It may be that this equity of the defendant in error' is not, technically, what is commonly called a “vendor’s lien,” inasmuch as the legal title has not been conveyed by him to the purchaser. It is, howevei-, at least as strong a hold upon the pi’operty sold as the lien of a vendor after title conveyed; for here not only is an equity retained by the vendoi’, in the pi’operty sold, to the extent of the unpaid purchase-money, but the legal title is also retained by him as additional security.
It cannot be said in this case, “ that, from the nature and objects of this sale, the vendor did xiot intend to rely upon the thing sold as security for his payment.” Retaining the legal title is very sti’ong, if not conclusive evidence that he did intend to rely upon it as security. The presumption, however, in all cases, even where the vendor conveys the legal title, is, that he intends to rely upon the property sold,, as security. And before his abandonment or waiver of such security can be found, it must be shown that he did not intend to rely upon it.
Nor will it do to say that “the difficulty in detennining the priorities of such liens, or in executing decrees in sxxch cases,” is evidence of an intention of the vendor to waive his lien. If such a lien can be enforced at all, the presumption *411 that the vendor intended to rely upon it is not weakened by the difficulties in the way, and if a court of chancery could' find no means of adjusting co-existing liens or equities of this kind, or of enforcing the sale of such property to satisfy them, the only inference would be, that the vendor has been, disappointed in his expectations.
Biit whether a court of equity has power to decree and means to execute its decrees in such cases, are the ultimate questions in this case, and not preliminary ones, the solution of which may aid us in working out a conclusion.
We can see no insurmountable difficulties in sustaining and executing the decree in this case, whether it be regarded as a decree enforcing a specific lien upon property, or a decree compelling the specific performance of the contract.
2. That a vendor’s lien is applicable to the sale of an'easement in land is not in terms denied by counsel for plaintiffs in error, and we see no good reason why such a lien may not attach against an easement as well as any other interest in land.
3. The judgment for damages for not constructing the-road in the manner provided for in the contract, is as much the price of the interest sold to the railroad company, as was the $1,500 agreed to be paid in money. The only difference is that the amount of cash was ascertained and agreed upon by the parties, while the amount of the damages was not ascertained till judgment. Both sums arose in contract,, and constituted the compensation the vendee was to return to the vendor for the interest purchased.
4. Having found the amount of purchase-money due the plaintiff below, as a predicate for the decree of sale, in default of the payment thereof, it was not error in the court below to decree the sale before finding the amount due upon the mortgage lien of Rockwell and determining the priority of the liens. In such matters there is a discretion in the court. And we cannot say that such discretion was abused in this case.
5. The defence by Rockwell, the Little Miami and Columbus and Nenia Railroad Companies, that they are inno *412 cent purchasers, for a valuable consideration and without notice of the right of defendant in error, cannot avail them.
The fact that defendant in error retained the legal title to the right of way sold, was sufficient to put them upon inquiry. They and each of them had constructive notice of the condition of the legal title. And had they, as prudent persons, made the inquiry suggested by the state of the legal title, they would have come to the knowledge of the rights of the -defendant in error.
6. The defendant in error was in nowise affected by the sale under the mortgage. He was not a party to that suit.
7. The last question we propose to consider is one of greater difficulty.
The court below decreed the sale of the whole of the Dayton, Xenia and Belpre Railroad (which at the time was being used as a public highway), to satisfy a specific lien of the defendant in error upon a section of the right of way. Is such decree erroneous ?
The rights of the public most not be ignored; and it is the right of the public that this highway be maintained. It was by and through the exercise of its power of eminent domain •that it was established. And we take it, that the right of the public to maintain the highway is paramount to the right of -the defendant in error to destroy it. To sell the section of the right of way over the lands of the defendant in error, and .separate its use from the line of the road, would destroy the highway. Hence to have decreed a sale of this fraction of the road, or right of way, would have been erroneous. The public having delegated to the Dayton, Xenia and Belpre Railroad Company the power to exercise the right of eminent domain in the establishment of this highway, the company had power to obtain the right of way for its road in two modes — by condemnation and prepayment of compensation under the right of eminent domain, or by contract with the owners of land, upon such terms as might be agreed upon. In Lewton’s case the latter mode was resorted to, and, by the terms of the contract, a right to enter upon the land and construct the road before the payment of compensation was se *413 cured; and yet that compensation was secured to Lewtonby an equitable lien upon the easement thus obtained by the-company. And justice requires that this security shall be applied to the satisfaction of Lewton’s claim. Can it be done?' The difficulty is apparent rather than real. The public has and can have no right which springs from an act of injustice to the defendant in error. Its only right is to preserve the continuity of the road, of the line of public travel and transportation. And this right is as well subserved, if the ownership and management of the highway be in the hands of one-party as another. Hence the public has no interest impaired by a sale of the whole line.
We have seen that the Little Miami, and Columbus and-Xenia Railroad Companies and Rockwell stand in the shoes of the Dayton, Xenia and Belpre Railroad Company. And what shall be said of the rights of the latter ? Has it a right to retain the properly of the defendant in error without paying for it ?
Having obtained the possession of this property from the-defendant in error, under a promise to pay for it, the Dayton,. Xenia & Belpre Railroad Company may not so blend and’ mix it with other property of its own, as to constitute a great and indivisible highway, and then be permitted to say in equity, to the defendant in error, This property, upon-which you had and have a specific lien, had become,, by my act, a part of a highway which the public has an interest in maintaining, and because the withdrawal of your part from the-common use would defeat the public right, therefore you may not enforce your lien.
On the other hand, because a part may not be sold on account of the paramount right of the public to keep the highway intact, a necessity arises, in order that justice may be done to the defendant in error, to decree the sale of the whole line of the road to satisfy his lien. And this is the only mode in which the rights and interests of other parties, either as owners or lien-holders upon the road, can be protected, and ¡ their property or security saved from absolute destruction.
The doctrine of this case is supported by Walker v. Ware, , *414 Hadham & Buntingford Railway Company, 12 Jurist N. S. pt. 1, p. 18. See also 2 Story’s Eq. Jur. by Redfield, 460, rand 33 Vermont, 311.

Judgment affirmed.

Soott, C.J., and Welch, White, and Day, JJ., concurred